# ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeal of -- )
)
DRS Global Enterprise Solutions, Inc. ) ASBCA No. 61368
)
Under Contract No. DAAB07-03-D-B013 *et al.*)

APPEARANCES FOR THE APPELLANT: David Z. Bodenheimer, Esq.
     Skye Mathieson, Esq.
      Crowell & Moring LLP
      Washington, DC

APPEARANCES FOR THE GOVERNMENT: Arthur M. Taylor, Esq.
     DCMA Deputy Chief Trial Attorney
     Michael T. Patterson, Esq.
     Trial Attorney
     Defense Contract Management Agency
     Chantilly, VA

## OPINION BY ADMINISTRATIVE JUDGE O'CONNELL ON APPELLANT'S MOTION FOR SUMMARY JUDGMENT

This appeal involves a government demand for repayment of more than $8.6 million. Appellant, DRS Global Enterprise Solutions, Inc. (DRS), contends that the government's claim is untimely and has moved for summary judgment. We deny the motion.

## STATEMENT OF FACTS FOR PURPOSES OF THE MOTION

The following facts are undisputed or uncontroverted.

On various dates, the government awarded contracts to DRS's predecessor (for simplicity, also referred to as DRS). The Defense Contract Management Agency (DCMA) administered these contracts for the government. Two of the contracts are in the record, both of which provide that DRS would be paid on a time-and-materials basis. (R4, tab 1 at G-2, tab 11 at G-255)

Appellant submitted the vouchers at issue between December 2005 and May 2006. The government paid all of these vouchers by December 15, 2006. (Appellant's Statement of Undisputed Material Facts (ASUMF) and Government's Response to ASUMF (gov't resp.) ¶¶ 4-5; compl. and answer ¶ 9) The vouchers are not in the record.

On February 28, 2008, DRS submitted its fiscal year (FY) 2006 incurred cost proposal (ICP) for the period from November 1, 2005 to January 31, 2006, to the government. On March 31, 2008, DRS submitted its FY 2006A ICP for the period from February 1, 2006, to March 31, 2006. (ASUMF and gov't resp. ¶¶ 7-8; R4, tabs 16-17)

On July 17, 2009, the Defense Contract Audit Agency (DCAA) conducted an entrance conference with DRS concerning the FY 2006 and 2006A ICPs (ASUMF and gov't resp. ¶ 13; compl. and answer ¶ 17).

Almost three years later, on April 3, 2012, DCAA informed DRS that its FY 2006 and FY 2006A ICPs were inadequate, contending that the schedules included with the submission lacked various information (ASUMF and gov't resp. ¶¶ 18-19; app. supp. R4, tabs 24-25).

DRS thereafter submitted additional information and on June 22, 2012, DCAA informed DRS that it had provided sufficient information for DCAA to perform the audits (ASUMF and gov't resp. ¶¶ 20, 23; app. supp. R4, tabs 27-28).

In September 2013, DCAA requested additional documentation from DRS, which it did not provide. On November 7, 2013, DCAA wrote to DRS to inform it that it had been denied access to data/documentation for labor transactions, direct material transactions and the other direct cost transactions. (Government proposed findings of fact ¶¶ 9-11[1]; ex. G-3 at G-14)

On December 30, 2013, DCAA issued an audit report in which it questioned more than $54 million in costs for the fiscal years at issue (ASUMF and gov't resp. ¶ 24; R4, tab 8 at G-168).

More than three years later, on September 11, 2017, a DCMA contracting officer issued a final decision demanding repayment of $8,607,879.23. Of this amount, the vast majority, $8,416,435.16, was for "other direct costs" that the contracting officer contended were unallowable. The final decision listed the purportedly unallowable costs and identified various reasons for the disallowance, including the lack of an invoice for the costs, proof of payment, or a signed purchase order. The remainder of the amount sought arose from the difference between DRS's billing rates and the indirect cost rates established in the final decision. (ASUMF and gov't resp. ¶¶ 27-29; R4, tab 10 at 239-45)

DRS filed a timely appeal with the Board on October 16, 2017.

---

[1] DRS has not disputed these facts. Thus, we find them to be undisputed. Board Rule 7(c)(2).

DECISION

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). When considering a motion for summary judgment, the Board's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. *Id.* at 249. We are required to view the record in the light most favorable to the nonmoving party, in this case the government. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The Contract Disputes Act (CDA) provides that "each claim by the Federal Government against a contractor relating to a contract shall be submitted within 6 years after the accrual of the claim." 41 U.S.C. § 7103(a)(4)(A). A claim accrues, "when all events, that fix the alleged liability of...the contractor and permit assertion of the claim, were known or should have been known." Federal Acquisition Regulation (FAR) 33.201.[2] The events fixing liability "should have been known" when they occurred unless they were either concealed or inherently unknowable at the time. *Alion Sci. & Tech. Corp.*, ASBCA No. 58992, 15-1 BCA ¶ 36,168 at 176,489 (citing *Raytheon Missile Sys.*, ASBCA No. 58011, 13 BCA ¶ 35,241 at 173,017). Only facts that could not reasonably be known by the claimant postpone claim accrual. *Id.* (citing *United States v. Commodities Export Co.*, 972 F.2d 1266, 1272 (Fed. Cir. 1992)).

Failure to meet a statute of limitations is an affirmative defense, for which DRS bears the burden of proof. *Kellogg Brown & Root Servs., Inc.*, ASBCA No. 58175, 15-1 BCA ¶ 35,988 at 175,823 (citing FED. R. CIV. P. 8(c); *Bridgestone Firestone Research, Inc. v. Automobile Club de L'Ouest de la France*, 245 F.3d 1359, 1361 (Fed. Cir. 2001)).

DRS contends it is entitled to summary judgment because the government's claim accrued more than six years before the September 11, 2017 final decision, or, in other words, before September 11, 2011. DRS identifies three alternative accrual dates. First, it contends, that for direct costs, the government's claim accrued no later than December 15, 2006, when it paid the last of the invoices at issue. (App. mot. at 1) Second, for the indirect costs, DRS identifies February 28, 2008, the submission date for the FY 2006 ICP and March 31, 2008, the submission date for the 2006A ICP (*id.* at 2), as the accrual dates. It also contends that the claim for direct costs began to accrue on these dates if it did not accrue in 2006 (*id.* at 23). Third, DRS contends that the claim accrued no later than the July 17, 2009 DCAA entrance conference by which

---

[2] We quote from the current version of the regulation but the version in the 2002 FAR (the year of the earlier of the two contracts in the record (R4, tab 1)) is the same or very similar in material respects.

point DRS contends that the auditor should have been aware "that the costs in the vouchers and ICPs were not sufficiently substantiated" (*id.* at 26).

The government contends that interim vouchers by their very nature do not contain supporting documentation (gov't opp'n at 28), nor do ICPs (*id.* at 38). The government further contends that there is no way it could have known that DRS could not substantiate the amounts billed until it failed to provide DCAA with requested documents in October 2013 (*id.* at 42).

With respect to DRS's contention that the claim for direct costs accrued when the government paid the invoices, we have denied summary judgment in comparable appeals. *Kellogg Brown & Root Servs., Inc.*, ASBCA Nos. 58518, 59005, 16-1 BCA ¶ 36,408 at 177,527-29 (denying summary judgment where contractor contended that claim accrued when government paid the first invoice containing controverted charges); *Kellogg Brown & Root Servs., Inc.*, ASBCA No. 58465, 16-1 BCA ¶ 36,253 at 176,869 (denying summary judgment where contractor contended the claim accrued on the last date the government made a payment on the invoices at issue). Accordingly, our precedent simply does not provide for a blanket rule that the statute begins to run when the government pays the invoice.

This does not mean that a claim never accrues on the date the government pays disputed costs. As DRS observes in its brief, we granted the appellant summary judgment in such a case in *Sparton DeLeon Springs, LLC*, ASBCA No. 60416, 17-1 BCA ¶ 36,601 at 178,310-11. We concluded in that appeal that there were undisputed facts demonstrating that the claim accrued either when the government paid the relevant invoices or when the contractor submitted its indirect cost rate proposals, both of which occurred more than six years before the contracting officer's final decision. But our conclusions in that appeal stemmed from admissions by the government in its brief as to the types of information it received when the contractor submitted its invoices and its ICP.[3] *Id.*

These decisions demonstrate that determining when the government reasonably should have known of its claim requires consideration of the unique facts in the appeal. This is particularly relevant in this appeal because the final decision identifies 39 discrete direct cost items that the contracting officer found to be unallowable. For purposes of illustration we will briefly review the largest single item at issue, a demand for repayment of $1,117,645 on voucher No. 99924 (*see* R4, tab 10 at 243).

---

[3] In its reply brief, DRS also cites a decision in which we held that the claim accrued on the date of ICP submission, but our ruling was based upon our finding that the ICP had included "expressly unallowable" costs. *Raytheon Co.*, ASBCA Nos. 57576, 57679, 13 BCA ¶ 35,209 at 172,751. There is no contention in this appeal that the costs were on their face unallowable, only that DRS failed to produce necessary supporting documentation.

4

The contracting officer found this amount to be unallowable because DRS was unable to provide proof of payment (R4, tab 10 at 243). DRS contends that the government should have recognized this back in 2006; it states that "[w]hether certain costs were substantiated or not involves objective facts that are *reasonably knowable* upon cursory review of the vouchers and/or ICPs" (app. mot. at 19) (emphasis in original). DRS also states that "[w]hen it paid th[e] vouchers in 2006, the Government possessed all material facts regarding the degree and adequacy of substantiation for those vouchered direct costs" (*id.* at 20). But, having made these provocative statements, DRS produces no smoking gun. Voucher No. 99924 is not in the record and, absent an admission by the government, we cannot accept DRS's assertion that a cursory review would reveal the lack of substantiation.

Furthermore, the parts of the ICPs that are in the record do not mention voucher No. 99924, or an amount of $1,117,645, nor do any of the other documents in the government's Rule 4 file. There is also no admission by the government that it knew that DRS could not provide appropriate documentation prior to September 11, 2011. Nor is there anything else in the record that provides uncontroverted proof that the DCAA auditor was aware of the lack of proof at the time of the entrance conference. Accordingly, the record as currently developed lacks undisputed facts demonstrating that the government knew or should have known of its claim before September 11, 2011.

We also observe that DRS's contention that the government should have known of its claim in 2006 is undermined by letters DRS wrote to DCAA and DCMA in 2013 and 2014. In those letters, DRS complained that the audit did not take place until seven years after the fiscal year closed, and alleged that a series of corporate acquisitions and consolidations, combined with its bank's policy of purging records after seven years, resulted in the loss or destruction of the requested documentation. (R4, tab 8 at G-231, tab 9 at G-233) This raises a rather obvious question: if the records disappeared over the course of seven years, how could the government have known about the lack of substantiation in 2006, as DRS contends in its motion?

In addition to *Sparton DeLeon Springs*, DRS primarily relies upon *Raytheon Missile Systems*, 13 BCA ¶ 35,241, but that decision is inapposite. *Raytheon* involved a contracting officer's final decision issued in 2011 demanding repayment of more than $10 million. The claim arose from a contract that the parties entered into back in 1999. Earlier that year, Raytheon had informed the government in a Cost Accounting Standards Disclosure Statement that certain major subcontracts would receive a special, reduced, application of its burden for overhead rates. Nevertheless, for one major subcontractor, Raytheon billed the government full burden, which the government began paying later in 1999. *Id.* at 173,015-16. In other words, the government was told it would be charged one rate but was charged (and paid) another rate. We held that the government's claim was "perfectly knowable" in 1999 because it had the key facts, even if it failed to connect them. *Id.* at 173,017.

5

There are no comparable undisputed facts in the present appeal. As we discussed above, DRS's sweeping statements with respect to the level of knowledge possessed by the government in 2006 are not supported by the current record.

For all of these reasons, the best course is to allow further development of the record to determine when the government should reasonably have known of its claim. *See Alion Sci.*, 15-1 BCA ¶ 36,168 at 176,490; *Boeing Co.*, ASBCA No. 58660, 15-1 BCA ¶ 35,828 at 175,190-94; *Lord Corp.*, ASBCA No. 54940, 06-2 BCA ¶ 33,314 at 165,169-70.

We note that DRS's motion raises only the statute of limitations. Therefore, we need not address whether the more than 10 years that elapsed between payment of the invoices at issue and the issuance of the contracting officer's final decision calls for application of the doctrine of laches.

## CONCLUSION

Appellant's summary judgment motion is denied.[4]

Dated: August 30, 2018

MICHAEL N. O'CONNELL
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

J. REID PROUTY
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

---

[4] The government's motion to file a sur-reply is denied as moot.

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 61368, Appeal of DRS Global Enterprise Solutions, Inc., rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals